IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NIEYANNA LEGGINS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 23 CV 15947 |
| v. | ) ) | JURY DEMANDED |
| FIRST MIDWEST BANCORP, INC., | ) ) | |
| Defendant. | ) | |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff, Nieyanna Leggins, individually and on behalf of all other persons similarly situated, known and unknown, through her attorneys, complains against Defendant First Midwest Bancorp, Inc. ("First Midwest" or "Defendant"), as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA"), for Defendant's failure to pay Plaintiff and other similarly situated persons all earned regular and overtime pay for all time worked.

2. Defendant manages, controls and operates a customer service call center within this judicial district and employs, manages and controls the telephone-based workers who are the putative class and collective members in this lawsuit. The telephone-dedicated employees in this case handled phone calls regarding financial services offered by Defendant to its customers.

3. Defendant required Plaintiff and similarly situated telephone-dedicated employees to be ready to handle a call at the start of their scheduled shift times.

4. In order to be ready to handle a call at the start of their scheduled shift time, Plaintiff and similarly situated telephone-dedicated employees had to begin work before their scheduled start time. Plaintiff and similarly situated telephone-dedicated employees first had to power on and then boot up their computers, open various software programs necessary for handling a call and/or read company work email regarding services and information for the day's calls.

5. Under its policies and practices, Defendant regularly failed to pay the telephone-dedicated employees for performing all of this pre-shift work.

6. Defendant knowingly required and/or permitted Plaintiff, who worked as a telephone-dedicated employee, and other similarly situated telephone-dedicated employees, to perform unpaid work before the start of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions prior to the start of their scheduled shift time. These activities are principal and integral duties of the telephone-dedicated employees' work.

7. The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately five to ten minutes per day and sometimes more per person.

8. The requirement of telephone-dedicated employees logging into their computers and opening up various software programs and applications is so common in the call center industry that the United States Department of Labor issued a fact sheet to the call center industry in June 2008 that reminded employers the pre-shift work is compensable work and is an example of the first principal activity of the day for agents/specialists/representatives working in a call center. (*See*, U.S. DOL Fact Sheet #64, Call Centers Under the Fair Labor Standards Act).

9. Plaintiff brings her FLSA overtime claims as a collective action pursuant to 29 U.S.C. 216(b) on behalf of telephone-dedicated employees who worked for Defendant in the United States. Plaintiff brings her IMWL overtime claims and IWPCA unpaid wage claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Illinois telephone-dedicated employees.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

11. This Court has supplemental jurisdiction over all class claims in this action under 28 U.S.C. § 1367.

## THE PARTIES

12. Plaintiff Nieyanna Leggins is an individual who Defendant employed from approximately November 2018 to May 31, 2022, as an hourly, non-exempt, telephone-dedicated employee who was placed to work in a call center operated by Defendant located in Joliet, Illinois. Plaintiff Leggins resides in and is domiciled within this judicial district.

13. Defendant First Midwest Bancorp, Inc. is a Delaware corporation qualified to transact business in Illinois.

14. Defendant First Midwest is a premier financial services company.

15. In approximately February 2022, Defendant First Midwest merged with Old National Bank, and currently is a division of Old National Bank.

16. Defendant employed Plaintiff and other similarly situated persons as "employees," as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e), Section 3(d) of the IMWL, 820 ILCS § 105/3(d), and Section 2 of the IWPCA, 820 ILCS § 115/2.

17. At all relevant times, Defendant was an "employer" of Plaintiff and other similarly

situated persons, as that term is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d), Section 3(c) of the IMWL, 820 ILCS § 105/3(c), and Section 2 of the IWPCA, 820 ILCS § 115/2.

## FACTUAL ALLEGATIONS

### A. *Defendant Operates A Call Center Where It Employs Phone Representatives*

18. During the recovery periods at issue in this case, Defendant operated a call center in Illinois where it employs telephone-dedicated workers whose job duties primarily consisted of handling phone calls regarding financial services offered by Defendant to its customers.

19. During the recovery periods at issue in this case, the telephone-dedicated employees at Defendant's call center handled calls using telephone systems, computers, software, and databases that are owned, controlled and/or managed by Defendant and that are or were located in the call center operated by Defendant.

20. Defendant earns revenue and profits from the services of the similarly situated telephone-dedicated employees.

21. Prior to starting work on the call center floor, Plaintiff and other similarly situated telephone-dedicated employees were and are interviewed by employees and managers of Defendant. Defendant's managers had the final say as to whether persons such as Plaintiff would be allowed to work for First Midwest.

22. Once an individual is hired to work as a telephone-dedicated employee for Defendant, he or she labors under Defendant's attendance, punctuality and tardiness policies and practices and its performance metrics and requirements. Additionally, Defendant supervises and controls the work schedules of the similarly situated telephone-dedicated employees.

23. At all material times, Defendant had the power to hire and fire Plaintiff and the putative collective and class of telephone-dedicated employees. At all times relevant hereto,

Defendant determined the rate of pay for Plaintiff and the similarly situated telephone-dedicated employees.

24. At the First Midwest call center where Plaintiff worked, Defendant's managers were always working on the floor of the call center during the workday, managing, monitoring and directing the work activities of the Plaintiff and other similarly situated persons, including the policies and practices at issue.

      **B.** *Defendant's Practice of Requiring and/or Permitting Telephone-Dedicated Hourly Employees to Work Before Their Scheduled Shift Time*

25. At its call center, Defendant required Plaintiff and similarly situated telephone-dedicated employees to be ready to handle a call at the start of their scheduled shift times.

26. In order to be ready to handle a call at the start of their shift time, Plaintiff and similarly situated telephone-dedicated employees regularly arrived at their workstation before the start of their scheduled shift time, logged into their computer, booted up several software programs, and read company issued emails and instructions, prior to the start of their scheduled shift time. These activities are principal and integral duties of the telephone-dedicated employees' work.

27. Defendant's policy and practice was to not pay for the pre-shift work its telephone-dedicated employees performed.

28. Defendant does not allow telephone-based employees to use its phones and computers for any personal use. Additionally, Defendant generally prohibits and does not allow telephone-based employees to use their own personal cell phones on the call center floor. Under Defendant's policies and practices, telephone-based employees are required to store their personal cell phones during the workday and can generally only use them while on breaks and off the call center floor.

29. Defendant's managers on the call center floor could and did regularly see that

Plaintiff and similarly situated telephone-based employees arrived at their workstations before the start of their scheduled shift time, logged into Defendant's computers, and began working on their computers prior to the start of their scheduled shift time.

30. Despite seeing and knowing that Plaintiff and similarly situated telephone-based employees performed work at their workstations prior to their scheduled shift time start, Defendant's managers on the floor of the call center did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

31. Defendant possesses, controls and/or has access to information and electronic data that shows the times Plaintiff and similarly situated telephone-based employees logged into their computers each day and the time they logged into their telephone systems.

32. By possessing, controlling and/or accessing this information, Defendant knew that Plaintiff and similarly situated telephone-based employees worked prior to the start of their scheduled shift time.

33. Despite having this information and knowing that Plaintiff and similarly situated telephone-based employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, Defendant did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

34. Defendant possesses, controls and/or has access to information and electronic data that shows the times Plaintiff and similarly situated telephone-based employees logged out of their telephone systems, software programs, and computers each day.

35. The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these principal, integral, required and unpaid work activities averages

approximately five to ten minutes per day and sometimes more per person.

### C. *Defendant Knew of and Assented to the Unpaid Work*

36. Defendant's policy and practice requires and/or permits telephone-based employees to be logged into their phones by the employee's scheduled start time.

37. In order to be logged into its telephone systems, Defendant required and/or permitted Plaintiff and similarly situated telephone-based employees to arrive at their workstation prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions. These activities are principal and integral duties of the telephone-dedicated employees' work.

38. Under Defendant's policy and practice, a telephone-dedicated employee is subject to discipline up to and including termination if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

39. These policies and practices of Defendant result in telephone-based employees, including Plaintiff, booting up their computers, initializing several software programs and/or reading company emails and instructions prior to their start of their scheduled shift time.

40. As set forth herein, via its policies and practices and through its own telephone and computer systems, Defendant knew and was aware that the telephone-based employees performed work prior to the start of their scheduled shift time.

41. Defendant did not instruct Plaintiff and similarly situated telephone-based employees to not log into their computers or telephone, or to not read company emails prior to the start of their scheduled shift time. Rather, Defendant required, permitted and/or allowed Plaintiff and the putative collective and class members to work prior to their scheduled shift time.

42. By knowing of, permitting and/or requiring Plaintiff and similarly situated

7

telephone-based employees to log into their computers, initialize their various software programs and/or read company email and instructions prior to the start of their scheduled shift time, Defendant assented to them performing this work.

### D. *Defendant's Failure to Pay Regular and/or Overtime Wages to Its Telephone-Based Hourly Employees*

43. Defendant initially scheduled Plaintiff Leggins to work from 9:00 a.m. to 5:30 p.m., with a 30-minute meal break during the workday.

44. Plaintiff typically worked an average of about 5 to 10 minutes prior to her scheduled shift start time without pay each day.

45. The net effect of Defendant's policies and practices, instituted and approved by Defendant's managers, is that Defendant willfully failed to pay regular and overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs. Defendant thus enjoyed ill-gained profits at the expense of its hourly employees.

46. Plaintiff and others similarly situated at times work or worked in excess of forty hours per week for Defendant in a given workweek.

47. Defendant's policy and practice of requiring and/or permitting its employees, including Plaintiff and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206, Section 4 of the IMWL, 820 ILCS § 105/4, and Section 4 of the IWPCA, 820 ILCS § 115/4.

48. Defendant's policy and practice of requiring its employees to perform work without pay in many instances has caused and continues to cause Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207, and Section 4a of the IMWL, 820 ILCS §

105/4a.

49. Defendant's failure to compensate its non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

50. Defendant's non-exempt, hourly call center employees are entitled to compensation for all time they worked without pay in any given workweek.

### E. *Defendant's Failure to Pay Agreed-Upon Hourly Rates For Work To Which Defendant Assented*

51. At all times relevant hereto, Defendant paid, and agreed to pay, Plaintiff and similarly situated employees in Illinois more than the federal and state minimum wage.

52. For example, when Defendant hired Plaintiff Leggins in 2018, Defendant agreed to pay Plaintiff $16.00 per hour for all work Defendant permitted and/or required of her, which is more than the applicable federal and state minimum wage.

53. At all times relevant hereto, Defendant agreed to pay Plaintiff and a class of similarly situated Illinois employees more than the state minimum wage for all work permitted and/or required by Defendant.

54. At all times relevant hereto, Defendant agreed to compensate its hourly employees for all "work" that Defendant required and/or permitted.

55. Booting up computers, initializing several software programs, and reading company email or instructions is "work" for which Plaintiff and similarly situated Illinois employees are entitled to their agreed-upon rate of pay.

56. The pre-shift tasks that Plaintiff and similarly situated Illinois employees performed are principal and integral activities of the telephone-dedicated employees' work.

57. Despite its agreement to pay Plaintiff and similarly situated Illinois employees more

9

than the statutory minimum wage for their work, and despite assenting to the work described herein, Defendant did not pay Plaintiff and certain other similarly situated Illinois employees their agreed-upon rate for performing all work permitted, required and/or assented to by Defendant.

58. Defendant's failure to compensate Plaintiff and other similarly situated Illinois employees at their agreed-upon wage for work it permitted, required and/or assented to has caused Plaintiff and other similarly situated employees to suffer harm.

## COLLECTIVE ACTION ALLEGATIONS

59. Plaintiff brings Count I of this Complaint as a collective action on behalf of herself and all other current and former hourly employees of Defendant who Defendant required to perform the work described herein without pay.

60. Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, and who were compensated, in part or in full, on an hourly basis throughout the United States at any time between November 14, 2020 and the present who did not receive the full amount of overtime wages earned and owed to them.

61. Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of handling phone calls regarding financial services offered by Defendant to its customers.

62. Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

63. Plaintiff and the other employees are also similar because Defendant did not pay them for all time they actually worked.

64. Defendant knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before their scheduled shifts, including but not limited to booting-up

computers, initializing several software programs, and reading company emails and instructions.

65. There are questions of law or fact common to the employees described in paragraph 60.

66. Plaintiff is similarly situated to the employees described in paragraph 60, as Plaintiff's claims are typical of the claims of those persons.

67. Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 60.

68. This is not a collusive or friendly action. Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect the interests of the persons described in paragraph 60.

69. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

70. At all relevant times, Defendant employed Plaintiff and the persons described in paragraph 60.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings Counts II and III as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all other current and former hourly employees of Defendant who Defendant required to perform the work described herein without pay.

72. With respect to Plaintiff's IMWL claims, Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between November 14, 2020 and the present who did not receive the full amount of overtime wages earned and owed to them (the "IMWL Class").

73. With respect to Plaintiff's IWPCA claims, Plaintiff seeks to represent a class

11

that is comprised of and defined as:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between November 14, 2013 and the present whose hourly rate exceeded the applicable Illinois minimum wage and who did not receive the full amount of wages earned and owed to them (herein the "IWPCA Class").

74. This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the IMWL Class and IWPCA Class are so numerous that joinder of all class members is impracticable.

75. Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of handling phone calls regarding financial services offered by Defendant to its customers while working in Defendant's call center.

76. Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

77. Plaintiff and the other employees are also similar because Defendant did not pay them for all time they actually worked.

78. Defendant knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, and reading company emails and instructions.

79. Plaintiff and the members of the IMWL and IWPCA Classes have been equally affected by Defendant's practice of not compensating employees for all time worked.

80. Plaintiff and the members of the IMWL and IWPCA Classes have been equally affected by Defendant's failure to pay all earned wages to Plaintiff and the class members.

81. Furthermore, members of the IMWL and IWPCA Classes still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

82. The issues involved in this lawsuit present common questions of law and fact; these

common questions of law and fact predominate over the variations that may exist between members of the Classes, if any.

83. Plaintiff and the members of the IMWL and IWPCA Classes, as well as Defendant, have a commonality of interest in the subject matter and the remedy sought.

84. Plaintiff is able to fairly and adequately represent and protect the interests of the members of the IMWL and IWPCA Classes. Plaintiff's Counsel are competent and experienced in litigating large wage and hour and other employment class actions.

85. If individual actions were required to be brought by each member of the Classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the IMWL and IWPCA Classes, to the Court, and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Classes are entitled.

86. Plaintiff has retained counsel experienced in complex employment litigation and in class action litigation.

87. Plaintiff and her counsel will fairly and adequately protect the interest of both classes.

## COUNT I – FLSA
**(Failure to Pay Overtime Wages)**

88. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 as paragraph 88 of this Count I.

89. Plaintiff, individually and on behalf and the members of the collective described in paragraph 60, asserts claims for unpaid overtime pursuant to the FLSA.

90. At any and all times relevant hereto, Defendant was an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

91. At any and all times relevant hereto, Defendant was an "employer" of Plaintiff and the members of the collective described in paragraph 60 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

92. At any and all times relevant hereto, Plaintiff and the members of the collective described in paragraph 60 were "employees" of Defendant as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

93. Plaintiff and the members of the collective described in paragraph 60 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

94. At all times relevant hereto, Defendant's failure to pay Plaintiff and the members of the collective described in paragraph 60 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

   a. Defendant knew that the FLSA required it to pay employees time and one-half for all time worked over 40 hours in a week;

   b. Defendant failed to maintain true and accurate time records; and

   c. Defendant encouraged Plaintiff and the members of the collective described in paragraph 60 to not record all time worked.

95. As a direct and proximate result thereof, Plaintiff and the members of the collective described in paragraph 60 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendant and in favor of Plaintiff and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

    a. Declare and find that the Defendant committed one or more of the following acts:

        i. Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

        ii. Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

    b. Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

    c. Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party plaintiffs;

    d. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

    e. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

    f. Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

    g. Grant such further relief as the Court deems just and equitable.

## COUNT II – ILLINOIS MINIMUM WAGE LAW
**(Failure to Pay Earned Overtime Wages)**

96. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 58 and 71 through 87 as paragraph 96 of this Count II, as if fully set forth herein.

97. This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1367.

98. The matters set forth in this Count II arise from Defendant's violation of the overtime compensation provisions of the Illinois Minimum Wage Law, 820 ILCS § 105/4a. Plaintiff brings this action on her own behalf and on behalf of the members of the IMWL Class pursuant to 820 ILCS § 105/12(a).

99. Defendant employed Plaintiff and other similarly situated telephone-dedicated workers as "employees," as the term "employee" is defined Section 3(d) of the IMWL, 820 ILCS

15

§ 105/3(d).

100. At all relevant times, Defendant was an "employer" of Plaintiff and other similarly situated telephone-dedicated workers, as the term "employer" is defined by Section 3(c) of the IMWL, 820 ILCS § 105/3(c).

101. Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiff and the members of the IMWL Class worked in excess of forty (40) hours, Plaintiff and members of the IMWL Class were entitled to be compensated at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

102. Defendant did not pay Plaintiff and members of the IMWL Class one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

103. Defendant violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff and the members of the IMWL Class at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

104. Pursuant to 820 ILCS § 105/12(a), Plaintiff and the members of the IMWL Class are entitled to recover treble damages and statutory penalties in the amount of five percent (5%) per month of the amount of underpayments.

WHEREFORE, Plaintiff and the members of the IMWL Class pray for a judgment against Defendant as follows:

    a. That the Court determine that this action may be maintained as a class action;

    b. A judgment in the amount of one and one-half times Plaintiff's and each other member of the IMWL Class' regular rate for all time they worked in excess of forty (40) hours per week, trebled;

    c. Statutory damages pursuant to the formula set forth in 820 ILCS § 105/12(a);

    d. Reasonable attorneys' fees and costs incurred in filing this action; and

e. Such other and further relief as this Court deems appropriate and just.

## COUNT III – ILLINOIS WAGE PAYMENT AND COLLECTION ACT
**(Failure to Pay the Agreed Upon Rate For Work Assented to by Defendant)**

105. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 58 and 71 through 87 as paragraph 105 of this Count III as if fully set forth herein.

106. Plaintiff, individually and on behalf of all others similarly situated, brings this Count III to recover from Defendant unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

107. At all times relevant, and at Defendant's request, Plaintiff and the members of the putative IWPCA Class performed work for Defendant.

108. As set forth *supra*, Defendant assented to pay Plaintiff and the members of the putative IWPCA Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage Law hourly rate, for all work Defendant permitted and/or required.

109. As set forth *supra*, Defendant assented to the hourly employees performing the work described above by, among other means, Defendant's knowledge and awareness of the pre-shift work described herein.

110. Defendant regularly observed, without objection or negative comment, the record and documentation of having Plaintiff and the members of the putative IWPCA Class perform work prior to the start of their scheduled shift time.

111. During their employment with Defendant, Plaintiff and similarly situated Illinois employees had an agreement with Defendant within the meaning of the IWPCA to be compensated for all time worked at the rates agreed to by the parties. Defendant did not pay Plaintiff or similarly situated Illinois employees for all hours worked at the rates agreed to by the parties as described

herein.

112. Plaintiff and the putative IWPCA Class members were entitled to be paid for all time worked at the rate agreed to by the parties.

113. When Defendant hired Plaintiff and the members of the putative IWPCA Class and advised them of the specific hourly rate they would be paid, Defendant did not inform Plaintiff and the members of the putative class that they would not be paid for all the work Defendant required and/or permitted.

114. Defendant has failed to pay Plaintiff and the members of the putative IWCPA Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, because Defendant did not pay them for the work described herein, in violation of the IWPCA, 820 ILCS § 115/4.

115. Defendant has failed to pay Plaintiff and the putative IWPCA Class the full amount for all hours worked because of the improper practices described herein.

116. Illinois Statutes 820 ILCS §§115/1 *et seq*. defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties…".

117. Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses…and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties." 820 ILCS § 115/2.

118. Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned. Illinois Statutes 820 ILCS §115/5

provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

119. Defendant violated Illinois Statutes 820 ILCS §§115/1 *et seq.* by regularly and repeatedly failing to properly compensate Plaintiff and the putative IWPCA Class members for the actual time they worked each week within 13 days of the date such compensation was earned and by failing to properly compensate Plaintiff and the putative IWPCA Class members their rightful wages by the next scheduled payday after their separation.

120. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the putative IWPCA class have suffered and will continue to suffer lost wages and other damages.

WHEREFORE, Plaintiff and the members of the IWPCA Class pray for a judgment against Defendant as follows:

a. That the Court determine that this Count III may be maintained as a class action;

b. A judgment in the amount of all back wages due, as provided by the Illinois Wage Payment and Collection Act;

c. Statutory damages pursuant to the formula set forth in 820 ILCS § 115/14(a);

d. Reasonable attorneys' fees and costs incurred in filing this action; and

e. Such other and further relief as this Court deems appropriate and just.

Dated: November 14, 2023

                Respectfully submitted,

                /s/ James X. Bormes
                One of Plaintiff's attorneys

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
312-201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
312-726-3400
tom@tomryanlaw.com